UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ANTHONY WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     2:25-cv-02233-SEM-DJQ |
| | ) |
| FELICIA ADKINS, *et al.* | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Danville Correctional Center, asserts that prison officials violated his constitutional rights via their failure to grant him admittance to an educational program. He also asserts that his constitutional rights were violated in the handling of his grievances about the same issue.

A. <u>Motion to Request Counsel</u>

Plaintiff's Motion to Request Counsel (Doc. 3) is before the Court.

The Court undertakes a two-part inquiry: (1) whether the plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so, and, if so, (2) given the difficulty

of the case, does the plaintiff appear competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir 2007).

Plaintiff attaches a list of two lawyers he contacted shortly before filing this lawsuit. Plaintiff indicates that when he filed that document (on August 21, 2025) he was awaiting response. He also does not indicate the nature of the requests that he sent to those two lawyers, such as a specific description of the claim he seeks legal help with. Plaintiff has not shown that he made a reasonable attempt to find a lawyer, or was prevented from doing so, before seeking Court assistance. Plaintiff must do so before requesting court assistance. This is normally accomplished by contacting several civil rights attorneys regarding the specific allegations in this specific case and requesting representation in this lawsuit as to those specific allegations, then providing the Court with copies of such letters sent, as well as any responses received, in support of any future request for Court assistance in finding a volunteer lawyer. *Pruitt v. Mote*, 503 F.3d 647, 653-655 (7th Cir. 2007). Plaintiff may renew his request for Court assistance with finding an attorney if he undertakes a reasonable search on his own as stated above, and the Court will consider the request at that time.

B. <u>Merit Review Order</u>

The case is before the Court for a merit review of Plaintiff's complaint. The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient allegations. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff names Warden Felicia Adkins, Warden McKenna Wenzel, Counselor Andrew Smarts, Grievance Officer Tom Hadler, the Administrative Review Board Chairman, Clinical Services Claire Mullis, and Education Facility Administrator Sterling Montgomery.

The Northwestern University Prison Education Program offers bachelor's degrees to incarcerated students within the Illinois Department of Corrections. The program is "government funded." There is an administrative process to ensure equity and fairness. The Education Facility Administrator of each IDOC institution is tasked with providing, collecting, reviewing, and forwarding program applications to Program Director Professor Jennifer Lackey, whose staff then evaluate the applications.

On April 11, 2024, Plaintiff handed his application to IDOC staffer Kenneth Phillips. Phillips told Plaintiff that Education Facility Administrator Sterling Montgomery received Plaintiff's application. The application deadline was April 15. If accepted into the program by Northwestern University, individuals in custody would be transferred to Sheridan Correctional Center for the fall semester, which began in September 2024.

Plaintiff, who did not receive a response to his application, began investigating the matter in August 2024. He received "no cooperation" from Defendant Montgomery, so he contacted Professor Lackey. On October 17, 2024, Plaintiff was informed that Defendant Montgomery misled Professor Lackey regarding Plaintiff's

application. Montgomery told Lacky that he chose not to process Plaintiff's application, stating that Plaintiff could not apply for the program 1) because he was "an EJP student" and "DACC student,"[1] and 2) Plaintiff could not participate in multiple programs at once.

Plaintiff is not an EJP student and was not a DACC student at the time he submitted his application. Additionally, the Northwestern Program states that applicants cannot be involved in more than one "degree offering program," yet in fact Defendant Montgomery processed multiple applications from other individuals in custody who were involved in two or three educational programs, including EJP, EIU, and DACC students.

In December 2024 Plaintiff learned that his application was emailed to Professor Lackey on October 16, 2024, the same day that Lackey informed Plaintiff that she was going to contact Defendant Montgomery about what had happened to Plaintiff's application. So, Plaintiff asserts, Montgomery had apparently emailed the application to Professor Lackey despite his earlier assertion that Plaintiff was ineligible to apply.

---

[1] These appear to refer to the Education Justice Project at the University of Illinois, and Danville Area Community College, respectively.

Plaintiff alleges that Defendant Lackey "engaged in conspiratorial practices and potential misappropriations of funds by neglecting to fulfill his official duties for the government funded program at issue. Plaintiff asserts that "this is a pervasive practice by [Montgomery]...."

Plaintiff further alleges that Grievance Counselor Smarts conspired under the guidance of his boss Ms. Mullis by not investigating or interviewing all parties to determine the veracity of Plaintiff's grievance claim, despite acknowledging that the issue was a clear violation. Grievance Officer Tom Hadler also conspired to not hold Montgomery, Smarts, and Mullis accountable by refusing to interview witnesses or investigate Plaintiff's claim, despite acknowledging that Plaintiff's application was not properly processed. The Administrative Review Board "explained the conspiracy to cover for their colleagues," denying Plaintiff's grievance as meritless. Plaintiff also sent a copy of his grievance, and a letter, to IDOC Director Latoya Hughes, and Chief of Programs and Support Services Jennifer Parrack and received no response.

Plaintiff's allegations do not state a claim for a violation of the Constitution or laws of the United States.

**Unawarded program sentence credits.** Good-time credits that have yet to be awarded or that are entirely discretionary are not liberty interests protected by the Due Process Clause. *Montgomery v. Anderson*, 262 F.3d 641, 644–45 (7th Cir. 2001); *see also Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (holding that a "deprivation of the opportunity to earn good time credits . . . is not a constitutional violation"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) ("[A prisoner] has no due process interest in the opportunity to earn good time credits.").

Here, Plaintiff was not entitled to participate in the educational program through Northwestern. Plaintiff's allegations support the conclusion that Montgomery mishandled Plaintiff's application, misstated Plaintiff's eligibility, and played favorites for other applicants to the Northwestern program. These allegations plausibly indicate violations of the educational program policy.

The Court understands Plaintiff's frustration over this series of events and encourages Plaintiff's pursuit of educational programs. But Plaintiff's allegations related to his application to the

Northwestern program do not plausibly indicate a violation of a right secured under the Constitution or Laws of the United States.

**Grievance handling.** Plaintiff's allegations against Defendants Felicia Adkins, McKenna Wenzel, Andrew Smarts, Tom Hadler, the Administrative Review Board Chairman, and Claire Mullis, based on the handling and ultimate denial of Plaintiff's grievances, also fail to state a claim.

State grievance procedures do not create substantive liberty interests protected by due process, nor is there a First Amendment right to any such procedure. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008) ("[T]here is no substantive liberty interest in a bona fide prison grievance process ….").

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion for Appointment of Counsel [3] is DENIED without prejudice.**

2. **Plaintiff's Petition to Proceed in Forma Pauperis [5] is MOOT. Plaintiff paid the filing fee.**

3. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff does not state a claim for relief in his Complaint. Plaintiff is allowed 21 days to amend his complaint, if he believes he can in good faith state a claim consistent with the standards discussed in this Order.**

Entered this 15th day of December, 2025.

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE